Cabell, P.
concurred in the reasoning and conclusion of Baldwin’s opinion..
Decree affirmed.
Note by the reporter. This caso possesses a melancholy interest, from the fact that the late Judge Stanard was in the act of preparing his opinion in it when he was struck down by the disease which in two days terminated his life. Seldom indeed has a light so brilliant been so suddenly extinguished.
The part of his opinion which he had written is here given, as well for the distinguished ability with which he discusses the subject, as because it is the last production of his pen.
Stanard, J.
On the argument of the question involved in this case, much labour and research has been *506 bestowed, especially by the counsel of the appellants. A most careful examination of it has resulted in the eonviction, that its solution depends on the application to it of a few simple and uncontested principles ; and when case to they are applied is correctly analyzed, and properly discriminated from those with which it has a seeming, but not real identity, those principles will be facile of application to, and of decisive effect on the question to be solved.
The general principles of law which confer and limit the marital rights of the husband, in the property of the wife in possession or in action, are too familiar to require to be stated, and too well settled to be open to controversy. In respect to her rights in action, called in legal phrase her dioses in action, the marital right gives but a qualified title thereto; and if the power of the husband be not so exercised during the coverture as to reduce them to his possession, or something equivalent thereto, and the wife survives, the right to the chose in action will still remain to the surviving wife. The rights in action on which money is demandable, may be arranged in three classes. 1st. Where the right and the remedy for it are legal, as bonds, note-debts, &c. 2nd. Where the right may properly be considered as legal, but the remedy therefor is in equity, as claims to legacies, distribution, &c. 3rd. Where the title is equitable, and the only remedy therefor is equitable. Of the first class, some may be assignable at law, and some not. The legal title to those assignable at law, passed by the assignment to the assignee, and vested in him, and this division at the common law, embraced bills of exchange only: to it the statutes in England have added promissory notes; and our statutes have added bonds, &c. With respect to those not assignable at law, so as to pass the legal title, as in the case of open accounts and judgments, the legal remedy therefor, notwithstanding the assignment, could be had but in the *507 name of the party with whom the debt was contracted, or by whom the judgment was recovered : and the assignee had in his own name a remedy in equity. Now, in respect to all these classes, the husband had the power to exercise absolute dominion ; that is, he could acquit or release the right, with or without consideration. But the nature and mode of exercising the marital right, otherwise sympathized with the differences of these several classes of rights in action, in respect to the dominion at law that might be exerted over, and the remedies that might be resorted to, to enforce them. In respect to legal rights, to be enforced by legal remedies, and to which full legal title might be passed by assignment, such assignment by the husband, with or without consideration, by displacing the legal title of the wife, as effectually as it would be by an acquittance or release, and vesting that title in the assignee, left nothing in him or her, either of title or remedy, and consequently nothing to survive, and therefore no right of survivorship; for there was nothing on which it could act. In respect to legal rights not assignable at law, the assignments of the husband left the legal title of the wife intact; and if this legal right of action in her remained at the death of the husband, that still survived to and in her, and gave her at law, full dominion over the right. The assignee had no right but in a Court of Equity, and that Court would not control this legal right but in deference to the consideration that might be paid for the assignment. Where the assignment was for valuable consideration, that Court treated it as a quasi reduction of the chose in action by the husband; and subjecting the claim of the assignee to the equity that would have attached to it if the husband were alive seeking the aid of that Court to recover the chose in action of the wife, gave the assignee that relief that would he granted to the husband. So, where the original and only remedy was in equity, whether the title to it was legal or equi *508 table, if it still remained in that condition, if the chose was outstanding at the death of the husband, and there was no claimant as special assignee for value, the right survived; and if there was such claimant for value, assignment, though a quasi reduction of the chose to possession, still left it charged with the equity of the wifp: In other words, the principle is, that when the husband so deals with the chose in action of the wife as to leave the legal title thereto still in the wife at the time of his death, the mere marital right and the acts in virtue of it, will not prevent the right of the wife from surviving, carrying with it a title to the chose ; and as rights which are merely equitable, or which can be enforced only in equity, though the husband may, at his will, cancel, acquit or release them, no claim of them will be sustained as controlling the right of survivorship, unless the assignment be for value; and then only to the extent that they would be were the husband living and claiming the aid of equity, to recover the chose. This summary embraces all the general principles by which the marital rights in choses in action of the wife, and the effect of the husband’s action on them during coverture, in the event of her surviving him, are measured, limited and defined : and indeed, all that have been insisted on by the appellants’ counsel. As corollaries from his right to release, acquit, or cancel them in pais, he may suspend, postpone, modify or change them by arrangements in pais with the debtor. The power to release, involves the right to make the obligation on the original chose secondary and contingent. Thus the husband might take an obligation to himself, or a bill of exchange, stipulating that no claim should be asserted on the original chose until the remedy on the new one should be exhausted, or until the acceptance of the bill was refused, and the remedy on it failed. As incidents to his power to receive or acquit, his acts affecting the interest of third pérsons may entitle them to exonera *509 tion, though the chose in action, that is, the bond or judgment, still remain, and the legal title to it abide in the wife on her surviving. Thus, if there be bond of, or judgment against principal and sureties, in the name of the wife, or of husband and wife, and the husband should by a binding contract with the principal debtor, without the consent of the sureties, give further day to the principal, and afterwards die, though the legal remedy on the bond or judgment would survive to the wife, the sureties would have a clear title to exoneration in equity, on account of this act of the husband. And the same right would exist, though the original chose should have been merged in a judgment or decree for it, in the name of husband and wife, or other changes that might be supposed, had taken place, which still left a legal title and right of action in the wife after the husband’s death.
In the case in judgment, it is conceded, or if not, it certainly could not be seriously controverted, that if the guardian and executrix had not given the official bonds for the performance of those offices, and had have come to account with the husband for the moneys which she, as guardian and executrix, had received and ought to have paid to the ward and distributee, the title to the money would have been definitively vested in him by the obligation given by the guardian and executrix for the balance of that account. It is the official bond as guardian and executrix, which, according to the argument of the appellant’s counsel, retains a right of action in the wife, which survives to her j and so survives as to attract to it the title to all that remains, and in effect in equity cancels the bond to the husband, or makes it merely subservient to the higher and paramount claim of the wife. The official bond is put on the footing of an original contract inter partes, or of a judgment in favour of the wife, which creates or establishes the debt which is unassignable at law, and for which the legal remedy *510 originally was and continued to be in the wife, until the original obligation is discharged by release or payment; that a release can only be made by the surviving wife, an(^ 110 payment can discharge but that to her who holds By this assimilation of the official bond to a contract or security inter partes, the bond given to the husband in the settlement of the account is treated as ancillary and appendant to the original and primary one; and regarding the official bond as fixing the debt, and correctly contending that that bond has not been assigned, and indeed that it is not assignable, the conclusion is, that the remedy on the bond remains in and survives to the wife, and carries with it the title to the money that may be recovered on it. To make good the argument, it is indispensable to shew that a legal remedy can still be had on the official bond, and that the title to the remedy abides in the wife. The existence of a remedy on the bond has been ably maintained; and it has been assumed, that if one exists, it must be in the wife. Now, that is the first and primary question belonging to the precise case under consideration, and this is its stress. In the cases that have been referred to in the argument, of contracts or judgments inter partes, all that was necessary was to shew that the remedy survived. If it did, it necessarily was in the obligee of the bond, or plaintiff in the judgment. But that that is not the case here, is, in this part of the case, the very point in debate. If in the further investigation of this case it should appear that though it be conceded that á legal remedy exists on the official bond, the title to that remedy is not in her, nor can it be asserted in her name ; the question whether a remedy remains need not be investigated, and as that question affects the interests of the sureties, who are not represented in this Court, and is purely a legal one, which they have a right to have decided by a legal forum, the consideration of it would be unnecessary as respects the appellants, and improper as it respects the codefendants.
*511 We are then conducted to the enquiry into the nature and function of the official bonds of executors and administrators, and to the distinction between them in respect to the remedies the law allows on them, and those that may or must be resorted to on contracts between parties.
Such official bonds are not evidence of any debt. They pre-exist any responsibility, which, under them, can be charged on the obligors. That responsibility accrues from extrinsic and posterior transactions in pais, and from those transactions only, the debt arises: and this debt may be originally a simple contract, and may pass into a specialty or judgment, without effect on the official bond, and still the remedy on it be in full force. While the debt remains entitled to the protection of the official bond, the remedy for it is in the name of the relator, who has the legal title, not in the bond, but in the debt. The bond remains unchanged, but the remedy is attendant on the debt. The bond is not assignable, or in any manner subject to control, otherwise than as that control is exercised over the debt. That debt may or may not be assignable at law, according to its original form, or to the form it may assume by the transactions in pais between debtor and creditor. If assignable at law, and assigned, or even if the assignment be rendered legally effective by the action of a decree of a Court of Equity, the title is taken out of the assign- or, and vests in the assignee ; and the remedy on the official bond, if any exists, must be in the assignee, and he must be the relator. In the assignor, no longer are united the indispensable requisites to constitute a title to a successful action on the bond, by shewing that a debt exists, for which the law allows a remedy on the bond, and that the legal title to that debt is in him. The remedy on the bond is the incident to the debt. The title to that debt depends not on the bond, but on the posterior transactions in pais. Those transactions may *512 retain the debt in the original owner, whether ward, legatee, distributee or creditor and may, notwithstanding the change in the form or dignity of the debt, preserve the attendant security for it, that the official bond affords.
These transactions giving the debt a new form, and in that form an assignable quality, the assignment of it, by clothing the assignee with the legal title to it, vests in him the legal right in a debt for which the official bond is the attendant security; and qualifies him to be the relator in a suit on the official bond to charge that debt on the obligor. In the case of Burnett v. Harwell, 3 Leigh 89, had the legatee made the assignment before the decree, and the suit in equity been prosecuted by, and decree rendered in favour of the assignee, though confessedly a remedy still remained on the official bond, that could not have been in the name of the legatee, and must have been in the name of the assignee,- because the title to the legacy, which did not pass at law by the assignment in pais, was by the decree divested out of the legatee and vested in the assignees. And though the official bond was not assignable, the debt for which it was a security, was so; and the action on the bond was not for a debt -imported by the bond, but was an appendage to the debt that subsequently arose ; the bond having no inherent vitality independent of such debt, but being subservient to the uses of him in whom the legal title to that debt abided. In illustration of this view of the subject, suppose the ward, in the case of Hamlin v. Atkinson, 6 Rand. 574, to whom the guardian had given his bond for the balance of the account, and thus gave the claim on the guardian a form which made that claim negotiable or assignable, had assigned that bond ; or suppose instead of the bond, he had given his negotiable note for the balance, and the ward, before the institution of the suit on the official bond, had assigned the bond or note, so as to divest her legal title, *513 could she have maintained, as relator, a suit on the official bond ? Would not her title as relator appear incurably defective on the plea or proof of these facts? The case has been perplexed and obscured by assuming almost as a postulate of the argument, that if there be a remedy on the official bond, it must be in the surviving wife: and then much ingenuity and research is displayed in the investigation of the common law doctrines of merger, shewing most satisfactorily the inefficacy of one security to merge another of equal or higher dignity. The only proposition advanced to shew that the remedy must abide in the wife, is that the official bond is unassignable. The proposition is indubitably correct; but having regard to the nature and function of the official bond, the question as to the person to whom belongs the remedy thereon, depends on the ownership of the debt of which it continues to be the guarantee. Though the bond is fixed, the ownership of the debt, if it be assignable at law, is changeable, and the remedy shifts as such ownership changes; and though an assignment of the bond is not made, or, indeed, is not practicable, it must follow and abide in the legal owner of the debt, or be utterly abrogated.
It is urged that the breach of the condition of the official bond gave a right of action, and that this is not merged in or affected by the creditor’s taking another bond; and for that, the case of Hamlin v. Atkinson is relied on. That case turned on the question of the merger of the official bond in the bond given to the ward, the relator in the suit on the official bond. It bears on the question whether the remedy on the official bond still remained, notwithstanding the bond of the guardian to the ward; but it has no connection with, nor could the question arise, who is the proper relator in such suit; for the legal title to the debt was, as it always had been, in the ward: and she was the relator. But again, I say, suppose she assigned this bond, what debt would have *514 passed by the assignment? Is it not the debt due on the guardianship ? And when the assignment had divested her of that, would the previous breach of the official bond hav13 left in her a right of action as relator on the bond, when her legal title to the very debt, the fai- . lure to pay which constituted and continued the breach, had been vested in another ? As the remedy, if one exists, is attendant on the debt, and, indeed, exists only as auxiliary and assistant to the enforcement of the debt, the action for the breach is inherent in the legal title to the debt, and is necessarily involved in the suit on the official bond. In the nature of things, there cannot be separate actions in different persons, one for the breach, when the legal title to the debt has been lost to the relator in that action, and the other for the debt which, after the breach, has been vested in the other.
It is said, though a decree or judgment in favour of the husband only, or an award on the reference that he makes of a claim in right of his wife on her guardian, or for a legacy or distributable share, awarding the money to be paid to him, though not paid during coverture, would vest the debt in the husband, and defeat the right of the surviving wife to remedy on the official bond, a bond to the husband which merges the debt as a claim on account, will not have that effect. The bond vests in the- husband the exclusive legal title to some debt; and what debt is it other than that which arose from the receipts by the guardian of money or property of the ward ? It is a debt over which he may exercise absolute dominion, by acquittance or release, It is the balance of an account, the settlement of which by the husband, as absolutely bound the wife as if made by her dum sola. It is a debt for which he, with the concurrence of the guardian, might take a bond, and bar all right to sue for as a debt at common law. Confessedly, had he and the guardian submitted the account to reference, and the referee had awarded the *515 payment of the balance to the husband only, that would have vested the debt in him. How can this effect be given to the award, and denied to the bond ? By the award, an act in pais, (by power derived solely from the husband and guardian,) awards the money to be paid to the husband. By the bond they consent that the same obligation shall be incurred. To say' that the former shall vest, and the latter not vest the debt in the husband, would be to affirm that they can give power to a third person by force of their consent, to do that effectually, which done directly by themselves, is nugatory and abortive.
Pursuing the idea, which recognizes that the breach of the official bond gave a right of action to the wife, which must abide with her till the debt is paid, or the right to it is passed to another by judgment, decree or award in favour of another, it is suggested that though such judgment, decree or award may be pleaded to an action in which she is relator, to shew that the debt does not abide in her, and consequently to bar such suit, the bond could not be so pleaded, because the judgment, decree or award, each shews on its face that the claim on the guardian has been acted on and passed by force of the decree, judgment or award, and vested in another, and you have no occasion to look behind them to ascertain that fact; whereas, this could not be shewn in the case of the bond, without looking behind it. Now, I apprehend that occasions may occur in which it would be necessary to look behind the decree or award, into the record, to shew that the accounts on which the decree may have been pronounced, or the award made, are those of the guardian; and that similar accounts, prefixed to, or recited in the bond, might furnish the like sort of evidence in the case of the bond. Nor do I discern the principle on which would be excluded the averment and proof that the bond was given for the balance of the guardian’s account; though no such ac *516 count be prefixed to, and no recital of the facts appear on the face of the bond. '
The bond in this case vested the debt in the husband, The official bond is but auxiliary and appendant to the which, if it continues to exist, so that a remedy still remains on the official bond, that remedy is attendant on the debt; and can be used only by the legal owner of the debt.
This conclusion is perfectly consistent with the general principles, a summary of which was given in the commencement of this opinion, and with the cases of Hamlin v. Atkinson, and those from 9 Watts, (Addams v. Heffernan,) and 2 Vernon, (Howman v. Corie,) so earnestly insisted on by the counsel for the appellants.
The case of Hamlin v. Atkinson, has been already noticed, and shewn to have no bearing whatever on the question that has been discussed; and the solution that has been made of which, determines my judgment in this case.
The case from 9 Watts is in perfect harmony with the general principles I have conceded; and having in view the nature and function of the official bonds, that case does not bear on the question which is here involved.: In that case a recognizance had been acknowledged to the wife before marriage, which had the force of a judgment, and was a lien on the lands of the debtor. After the marriage the husband took a bond to himself for the amount of the debt, which confessedly, did not merge or discharge the recognizance. It was not given or accepted in satisfaction of the recognizance. The money not being paid on the bond at the death of the husband, the land which was bound by the recognizance, (the right to, and remedy on which survived to the wife,) was sold, and the purchase money was to be disposed of by the Court, to satisfy this and other liens; and the question was, whether the money that was to be applied to discharge this lien should, by the Court, act *517 ing as a Court of Equity, be paid to the wife, or to the administrator of the husband; and the Court properly decided that the surviving wife was entitled. The recognizance, and the remedy on it, had survived to the wife, and the money was the produce of that remedy. On what principle could the Court of Equity have taken the legal rights of the wife, and their fruits from the surviving wife, and devoted them to the uses of the estate of her deceased husband ?
The case supposed by the appellants’ counsel, in so far as it is assimilated to that in 9 Watts, departs from the case at bar. The judgment on the official bond at the relation of the husband and wife, would have definitively merged the official bond, and fixed the right under it in the relators. It would be a judgment debt to the husband and wife, which on his death would necessarily survive to the wife, unless released or satisfied. The legal title therein would necessarily survive to the wife, as it could not merge in a bond that might be given to the husband by the parties against whom it might have been rendered. There could be no obstruction to the enforcement of this legal right, if the bond was not taken in satisfaction ; and if it was, confessedly, it would have extinguished the right of the wife. The legal right would have been enforced at law, and at law only ; and then the representative of the husband could not have placed the bond above the judgment, to defeat the right of the wife but by the aid of a Court of Equity ; which, on the conceded principles of that Court, would not be given.
The principle on which the case from 2 Vernon was decided is not distinctly enunciated, but an examination of it, I think, affords abundant justification of that decision ; and it does not bear on this case. * * * * * * * ******